IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **VINCENT BIZILJ,** *Individually and as Parent and Next Friend of W.B.,* ) ) ) | |
| and ) ) | |
| **SCOTT BIZILJ,** ) ) | |
| **Plaintiffs,** ) v. ) ) **ST. JOHN'S MILITARY SCHOOL,** ) ) **Defendant.** ) ) | CIVIL ACTION No. 08-CV-2036-CM |

## MEMORANDUM AND ORDER

Plaintiffs Vincent Bizilj, as the parent and next friend of W.B., and Scott Bizilj bring this lawsuit against defendant St. John's Military School, alleging (1) negligent supervision, (2) intentional failure to supervise, (3) intentional infliction of emotional distress and (4) outrage. This matter is before the court on Defendant's Motion for Summary Judgment (Doc. 47).

### I.   Factual Background

Defendant St. John's is a private school located in Salina, Kansas. Plaintiff Scott Bizilj and his younger brother W.B. were enrolled as students at St. John's during a portion of the 2006–07 school year. Scott attended St. John's from October 30, 2006 through the fall semester, which ended December 14, 2006, and a portion of the spring semester—from January 8, 2007 until February 2, 2007. W.B. attended St. John's from November 3, 2006 to December 14, 2006. Upon entering St. John's, Scott and W.B. signed a document agreeing to report hazing incidents to an adult at St. John's.

Both Scott and W.B. allege they suffered numerous instances of physical abuse at the hands of other St. John's students. The alleged abuse included being beaten; being forced to drink water immediately preceding physical exercises, which caused them to vomit (this practice is referred to as "water PT"); being instructed by older students to fight their classmates; and receiving "saber swats." Scott was forcibly held down while several students punched and kicked W.B. Neither Scott nor W.B. told any adult at St. John's about the abuse. They told their parents about the abuse when they were home on Thanksgiving break. When their mother asked why they had not reported the abuse to St. John's staff, they told her that if they reported the abuse, they would end up in the hospital. About a week after Thanksgiving break, one of St. John's nurses called Ms. Bizilj, on a matter unrelated to the abuse. Ms. Bizilj told the nurse she was concerned about hazing going on at the school, but that she had told the boys she would not say anything to anyone about it. The nurse said she would see if she could get Scott to confide in her. Ms. Bizilj never heard back from the nurse.

After returning from Thanksgiving break, W.B. was branded by another student. Mr. and Ms. Bizilj learned about W.B.'s brand over Christmas break. Scott and W.B. once again told their parents about the physical abuse they were suffering at St. John's. Mr. and Ms. Bizilj emailed St. John's and had a telephone conference with the Commandant of Cadets, Antonio Pino. They told Mr. Pino about W.B.'s branding and the other abuse. W.B. did not go back to St. John's after Christmas break, but Scott returned to the school. St. John's was going to dismiss Scott for reasons unrelated to the abuse, but Scott successfully appealed the dismissal and was reinstated. Scott later fell ill and eventually left St. John's.

Prior to Scott and W.B. attending St. John's, the school was aware that hazing was a general

-3-

problem and implemented safety measures. St. John's made each student sign an agreement that they would abide by the anti-hazing policy and report hazing. The school also had video surveillance in the hallways to monitor the students, conducted weekly bruise checks to determine if students were being abused, and suspended or expelled students caught physically abusing other students.

Students were allowed to discipline other students, which included physical activity such as push-ups. This discipline would sometimes go to the point of exhaustion. When hazing was reported, the staff would sometimes inform the student leaders to inquire whether they knew anything about the incident. Jack Fox, the president of St. John's, does not remember whether the school investigated W.B.'s branding.

**II.     Standards for Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.     Discussion**

    *A.     Negligent Supervision*

To establish negligent supervision, plaintiffs must establish that (1) defendant owed them a duty; (2) the duty was breached; (3) the breach was the proximate cause of the plaintiffs' injuries; and (4) plaintiffs sustained damages. *Thomas v. County Com'rs of Shawnee County*, 198 P.3d 182, PP (Kan. Ct. App. 2008). There is no affirmative duty to protect an individual unless one can

establish a special duty is owed to the injured individual.  *Id.*  Under Kansas law, schools act *in loco parentis* with respect to students and owe students a duty "to properly supervise students and to take reasonable steps to protect students' safety."  *Dunn v. Unified Sch. Dist. No. 367*, 40 P.3d 315, 326 (Kan. Ct. App. 2002).[1]  "Proper supervision" differs from student to student.  *Id.* at 327.  Whether a school properly supervised students is a question of fact for the jury.  *Id.*

Defendant argues that plaintiffs cannot establish a breach of duty because defendant had policies, procedures, and disciplinary measures in place to protect against hazing and physical violence.  Those practices included (1) making each student sign an agreement that they would abide by the anti-hazing policy and agree to report hazing; (2) utilizing video surveillance in the hallways to monitor the students; (3) conducting bruise checks on a weekly basis; and (4) suspending or expelling students caught physically abusing other students.  Although defendant implemented these safety measures, their effectiveness is in dispute.  As plaintiffs point out, Scott and W.B. signed the anti-hazing policy, but they knew student leaders might find out if they reported the abuse.  This created a fear of retribution and kept them from reporting the abuse to St. John's staff.  Additionally, the school downplayed hazing by telling parents not to overreact to their children's reports of hazing.  And there are questions regarding the sufficiency of the video surveillance and bruise checks.

It is for the jury to say whether defendant properly supervised its students and took reasonable steps to project plaintiffs' safety.  Viewing the facts most favorably to plaintiffs, the evidence is such that a reasonable jury could render a verdict for plaintiffs.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  The evidence is not so one-sided that one party must prevail as a

---

[1] This duty, however, does not extend to protection from emotional abuse.  *Theno v. Tonganoxie Unified Sch. Dist.*, 377 F. Supp. 2d 952, 968–69 (D. Kan. 2005).  To the extent plaintiffs argue defendant owed them a duty to protect them from emotional abuse, such claims are denied.

matter of law. *Id.* at 251–52. The court concludes that there are material facts in dispute that preclude summary judgment on plaintiffs' negligent supervision claim.

### B. *Intentional Failure to Supervise*

The parties agree that to prevail on their intentional failure to supervise claim, plaintiffs must establish that St. John's intentionally or recklessly disregarded a known risk—hazing. St. John's allowed students to discipline other students. This discipline sometimes lead to physical activity to the point of exhaustion. There is a dispute as to whether adults at St. John's knew this was going on. The record also suggests that despite knowing that the students were using sabers to swat other students, the St John's staff allowed certain students to wear them. Additionally, there is evidence that St. John's did not investigate certain instances of branding. After reviewing the record, the court finds there are genuine issues of material fact that must be determined by the jury. Defendant's motion is denied with respect to plaintiffs' intentional failure to supervise claim.

### C. *Outrage and Intentional Infliction of Emotional Distress*

Under Kansas law, the tort of outrage is also known as intentional infliction of emotional distress. *Hallam v. Mercy Health Ctr. of Manhattan, Inc.*, 97 P.3d 492, 341 (Kan. 2004). To establish such a claim, a plaintiff must present evidence which establishes that (1) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the defendant's conduct and the plaintiff's mental distress; and (4) the plaintiff's mental distress was extreme and severe. *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 930 (Kan. 1999) (citing *Smith v. Welch*, 967 P.2d 727, 733 (Kan. 1998)). The court must make a threshold determination that the defendant's conduct may be regarded as sufficiently extreme and outrageous to permit recovery under the law and that the plaintiff's mental distress was of such a nature that no reasonable person should have

been expected to endure it under the circumstances.  *Id.*  To support plaintiffs' claims, the conduct "must be so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society."  *Id.* (citing *Fusaro v. First Family Mtg. Corp.*, 897 P.2d 123, 131 (Kan. 1995)).

Upon review of the record, the court finds that plaintiffs meet the threshold requirements for their claims.  The record supports a finding that St. John's was aware of the potential for hazing among its students and yet allowed higher-ranking students to discipline lower-ranking students with physical activity, which had the potential to, and did, lead to physical abuse.  Further the discipline from St John's staff with regard to hazing was sporadic and inconsistent with its attempt to eliminate hazing at the school.  Additionally, the court finds that under the facts presented, plaintiffs may have suffered severe mental distress.  Considering the evidence in the light most favorable to plaintiffs, they have met the threshold requirements; it is for the trier of fact to determine whether St. John's conduct was extreme or outrageous and whether plaintiffs suffered severe mental distress.  Defendant's motion for summary judgment on plaintiff's outrage and intentional infliction of emotional distress claims is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 47) is denied.

Dated this 9th day of October 2009, at Kansas City, Kansas.

     **s/Carlos Murguia**
     **CARLOS MURGUIA**
     **United States District Judge**